KING, Justice,
for the Court.
¶ 1. This guardianship case began in the Youth Court for the City of Pearl. Upon the request of petitioners Wanda Bell and Jane Dennis Morse, the youth court transferred the case to the Rankin County Chancery Court. Later, Bell and Morse requested that the chancery court dismiss their petition, alleging that the court lacked subject-matter jurisdiction. In addition to dismissing the case with prejudice, the chancellor awarded custody of the child to Frances Cathryn Dennis Finnegan, the child’s natural mother.
*610 ¶ 2. Aggrieved, Bell and Morse appeal, raising two issues:
I. Whether the youth court erred by transferring the case to chancery court; and
II. Whether the chancellor erred by awarding custody to Finnegan.
This Court determines that the chancellor properly had jurisdiction of the case. However, the chancellor erred by dismissing the case and awarding custody to Finnegan without any on-the-record findings.
FACTS AND PROCEDURAL HISTORY
A. Youth-Court Proceeding
¶ 3. Baby Dennis was born on September 14, 2004.[1] One month later, the youth court held a shelter hearing based on evidence that Baby Dennis had tested positive for marijuana at birth. On November 16, 2004, the youth court adjudicated that Baby Dennis was neglected and awarded custody of the child to Richard Dennis (“Richard”), the maternal grandfather. The youth court granted Richard durable legal custody on December 13, 2005. Richard died in 2009. At the time, Bell was Richard’s live-in companion. Finnegan agreed that Bell could have temporary custody of Baby Dennis. On May 19, 2009, the youth court entered a temporary order to that effect and set a review hearing to occur after one year.
¶ 4. In preparation for the review hearing, Finnegan filed in the youth court a “Written Request for Release of Custody.” [2] The review hearing was set for July 27, 2010. On advice of counsel, Bell and Morse, the maternal great-aunt, filed a petition for coguardianship in chancery court on July 26, 2010.[3] The chancery-court filing did not mention the pending youth-court matter. Bell and Morse appeared at the youth-court hearing and informed the youth court of their chancery-court filing. Bell and Morse then requested that the case be transferred to chancery court; Finnegan objected to the transfer.
¶ 5. The youth court determined that it would be in the child’s best interest if the matter were transferred to chancery court. The youth court stated two supporting reasons for its decision: “(a) the child has not resided with her mother since the child was a few days old; and (b) the chancery court is able to grant long-term relief to the parties and the youth court cannot grant long-term relief.” Accordingly, the youth court entered an order transferring the custody case to chancery court and ordered that all youth-court orders were to remain in effect until the chancery court had rendered a decision.
B. Chancery-Court Proceeding
¶ 6. On September 20, 2010, Bell’s and Morse’s attorney filed a motion to withdraw as counsel in the chancery-court proceeding. The chancellor granted the motion on October 13, 2010. Days later, Bell and Morse, assisted by new counsel, filed a motion to dismiss their petition for coguar-dianship. In their petition, Bell and Morse argued that the youth court had exclusive and priority jurisdiction over the *611 matter; thus, the chancery court lacked subject-matter jurisdiction. During the hearing on the motion, the chancellor expressed his confusion and dissatisfaction with Bell’s and Morse’s motion to dismiss, noting that they had requested the transfer to chancery court. Finnegan’s counsel also expressed that he was perplexed by Bell’s and Morse’s motion to dismiss, because Bell and Morse had requested the transfer. Because Finnegan had objected to the transfer in youth court, Finnegan’s counsel joined the motion to dismiss the petition for coguardianship.
¶ 7. On October 19, 2010, the chancellor entered his final judgment, dismissing the petition for coguardianship with prejudice. In his judgment, the chancellor stated that the youth-court orders were no longer in effect, he deprived Bell of any “authority” over Baby Dennis, and he vested full custody of Baby Dennis in Finnegan as the natural mother. The chancellor also ordered Bell and Morse to pay sanctions in the amount of $750 to Finnegan for filing a frivolous lawsuit. Aggrieved, Bell and Morse timely filed their notice of appeal on November 17, 2010.
ANALYSIS
¶ 8. A motion to dismiss for lack of subject-matter jurisdiction is a question of law, which this Court reviews de novo. Derr Plantation, Inc. v. Swarek, 14 So.3d 711, 715 (¶ 8) (Miss.2009).
I. Whether the youth court erred by transferring the case to chancery court.
¶ 9. Bell and Morse argue that the youth court had exclusive and priority jurisdiction over their case; thus, the youth court erred by transferring the case to chancery court. They also argue that the Mississippi Youth Court Act does not give the youth court authority to transfer its case to chancery court. Finnegan argues that Bell and Morse are judicially estopped from appealing the chancellor’s dismissal. Finnegan further argues that the youth court had properly relinquished its jurisdiction of the matter; thus, the case was properly before the chancellor.
A. Judicial Estoppel
¶ 10. Bell and Morse complain that, while the youth court acceded to their request for transfer to chancery court, it lacked the authority to do so. It is important to note that Bell and Morse are not appealing the youth court’s transfer order. Bell and Morse have appealed the chancellor’s order of dismissal. Challenging the youth court’s transfer order and challenging the chancellor’s order of dismissal are two different actions.
¶ 11. “[J]udicial estoppel arises from the taking of a position by a party to a suit that is inconsistent with the position previously asserted in prior litigation.” Ivy v. Harrington, 644 So.2d 1218, 1222 (Miss.1994). Generally, this Court will employ judicial estoppel to preclude a party from gaining an advantage by asserting as error an issue which it created. See Derr Plantation, 14 So.3d at 720-21 (¶¶ 22-24) (Randolph, J., specially concurring). However, we do not reach Finnegan’s judicial-estoppel argument. Because the issue is one of a court’s jurisdiction, we deem it appropriate to address the merits of the issue.
B. Jurisdiction
¶ 12. Bell and Morse rely on Mississippi Code Section 43-21-151 to support their position. The statute states, in pertinent part, that:
(1) The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in *612 need of supervision, a neglected child, an abused child or a dependent child except in the following circumstances:
(c) When a charge of abuse of a child first arises in the course of a custody action between the parents of the child already pending in the chancery court and no notice of such abuse was provided prior to such chancery proceedings, the chancery court may proceed with the investigation, hearing and determination of such abuse charge as a part of its hearing and determination of the custody issue as between the parents, notwithstanding the other provisions of the Youth Court Law....
Miss.Code Ann. § 43-21-151(l)(c) (Rev. 2009); see also Helmert v. Biffany, 842 So.2d 1287, 1290-1292 (¶¶ 14-20) (Miss.2003).
¶ 13. Mississippi Code Section 43-21-301 (Rev.2009) provides that “[n]o court other than the youth court shall issue an arrest warrant or custody order for a child in a matter in which the youth court has exclusive original jurisdiction but shall refer the matter to the youth court.” The youth court’s jurisdiction of a case continues until the child’s twentieth birthday, “unless sooner terminated by order of the youth court.” Miss.Code Ann. § 43-21-151(2) (Rev.2009) (emphasis added).
¶ 14. Because the case was initiated in youth court, Bell and Morse argue that the youth court had exclusive and priority jurisdiction of the matter. Although Bell and Morse requested that the case be transferred to chancery court, they argue that the youth court erred in granting their request.
¶ 15. Bell and Morse cite K.M.K. v. S.L.M. ex rel. J.H., 775 So.2d 115 (Miss.2000), to support their position. In K.M.K., a youth court had placed a child in foster care. Id. at 116 (¶ 2). The foster parents had attempted to terminate the natural mother’s visitation rights in youth court without success. Id. at 117 (¶ 4). Thereafter, the foster parents had filed a petition to terminate the natural mother’s and father’s rights in chancery court. Id. at 116 (¶ 3). The mother had filed a motion to dismiss the action, alleging that jurisdiction was improper in the chancery court. Id. at 117 (¶ 4). The chancellor had denied the mother’s motion to dismiss. Id. at 117 (¶ 5). The case came before this Court on interlocutory appeal. Id.
¶ 16. In a five-to-four decision, the Court held that: “a chancery court may not exercise jurisdiction over any abused or neglected child or any proceeding pertaining thereto over which the youth court may exercise jurisdiction if there has been a prior proceeding in the youth court concerning that same child.” Id. at 118 (¶ 10). The Court further explained that its holding upholds the plain meaning of the statute, prevents forum shopping and potentially conflicting orders, and “promote[s] judicial economy by allowing a court already familiar with the parties and situations to hear all petitions dealing with those same parties and situations.” Id. at 118 (¶ 12).
¶ 17. The present case is distinguishable. Although the negligence action concerning Baby Dennis initially was brought in youth court, the youth court voluntarily relinquished its jurisdiction of the custody matter. Bell and Morse filed their petition for coguardianship in chancery court, one day before the youth-court hearing. At the time, their filing was not an appropriate remedy for seeking relief. But during the youth-court hearing, Bell and Morse informed the youth court of their chancery-court filing and requested that the custody matter be transferred to chancery court.
*613 ¶ 18. The youth court very well could have denied Bell’s and Morse’s request and retained jurisdiction of the case. See Miss.Code Ann. § 43 — 21—151(l)(c) (Rev. 2009). Instead, the youth court agreed with Bell and Morse, finding that it lacked the ability to provide long-term relief to the parties. The youth court did not explain why it could not provide long-term relief. But the Court notes the frequency of periodic review of youth-court orders. For instance, Mississippi Code Section 43-21-613(3)(a) provides, in pertinent part, that:
Unless the youth court’s jurisdiction has been terminated, all disposition orders for supervision, probation or placement of a child with an individual or an agency shall be reviewed by the youth court judge or referee at least annually to determine if continued placement, probation or supervision is in the best interest of the child or the public. For children who have been adjudicated abused or neglected, the youth court shall conduct a permanency hearing within twelve (12) months....
Miss.Code Ann. § 43-21-61S(3)(a) (Rev. 2009) (emphasis added). This Court has previously held that “the intent of durable legal custody is merely to avoid the required annual dispositional reviews by the youth court.” In re Sam, 826 So.2d 1266, 1280 (¶ 40) (Miss.2002). Bell was given only temporary custody, which was subject to annual review. Pursuant to Section 43-21-151(2), the youth court terminated its jurisdiction of the case.
¶ 19. Bell and Morse argue that the Mississippi Youth Court Act does not specifically allow the youth court to transfer a case to chancery court, stating that the Act allows transfers only to circuit court. See Miss.Code Ann. §§ 43-21-157, 159 (Rev. 2009). We find a lack of caselaw in which a youth court voluntarily relinquished its jurisdiction and transferred a custody hearing to the chancery court for resolution. But the Youth Court Act does not specifically prohibit the action. The plain language of the Act does allow the youth court to terminate its jurisdiction of a case. See Miss.Code Ann. §§ 43-21-151(2), 43-21-613(3)(a) (Rev.2009). Because the youth court had terminated its jurisdiction, there was no chance of conflicting orders and the like, as expressed in K.M.K.
¶ 20. The Court’s holding today does not suggest that youth courts can simply terminate their jurisdiction to get cases out of their chambers. But, in this case, there is no harm in allowing the chancery court to retain jurisdiction. The issue of neglect was not transferred for the chancery court’s consideration. The youth court had adjudicated Baby Dennis neglected more than six years prior to its transfer order, and there is no evidence in the record of any further abuse or neglect. The matter transferred involves purely custody. Thus, the chancery court’s retention of this case would not run afoul of the youth court’s jurisdiction. To the extent that the chancellor considers the neglect charge, it would be considered only in determining to whom to award custody of Baby Dennis.
¶ 21. In light of this, the Court finds that, pursuant to Section 43-21-151(2), the youth court had authority to terminate its jurisdiction of the case. Thus, the case was properly before the chancellor. In his order of dismissal, the chancellor acknowledged that he properly had jurisdiction of the case. Thus, we affirm this part of the chancellor’s order.
II. Whether the chancellor erred by awarding custody to Finnegan.
¶ 22. Bell and Morse argue that the chancellor erred by awarding custody to Finnegan because (a) he dismissed the ac *614 tion and, thus, cannot rule on the merits of the case; and (b) he failed to make any findings of fact. Finnegan maintains that: (a) when the chancellor dismissed the case, no custody orders were in effect; and (b) because Bell and Morse did not move forward with their petition, no findings of fact were necessary. The Court finds that the chancellor erred by dismissing the action and then ruling on the merits of the case. The chancellor should have proceeded with a full custody hearing, determining the best interest of the child.
A. Dismissal With Prejudice
¶ 23. Bell and Morse moved for dismissal under Mississippi Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) allows the parties to file a motion to dismiss for lack of subject-matter jurisdiction. M.R.C.P. 12(b)(1). “Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action or transfer the action to the court of proper jurisdiction.” M.R.C.P. 12(h)(3). The question of subject-matter jurisdiction may be raised at any time. Burnette v. Hartford Underwriters Ins. Co., 770 So.2d 948, 951 (¶ 7) (Miss.2000) (citing M.R.C.P. (12)(h)(3) emt.).
¶ 24. First, Bell and Morse argue that the chancellor had dismissed the action and thus could not rule on the merits of the case. They cite the definition of “subject-matter jurisdiction” to support their position, stating that:
Black’s Law Dictionary (8th Ed. 2005), defines “subject-matter jurisdiction” as “^jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things.”
They cite no other authority to support their position.
¶ 25. The Court finds that the chancellor could not dismiss the action with prejudice and, after doing so, proceed to rule on the merits of the ease. In Rayner v. Raytheon Company, 858 So.2d 132 (Miss.2003), this Court held that a dismissal with prejudice indicates a ruling on the merits, which is not appropriate for a dismissal for want of jurisdiction. In Rayner, Rayner sued Raytheon in state court. Id. at 133 (¶ 2). Raytheon removed the case to federal court. Id. Rayner then filed a motion to remand. Id. The federal court dismissed the case for lack of subject-matter jurisdiction and denied the request for remand. Id. Rayner later sought relief in state court. Id. at 133 (¶ 3). The circuit court dismissed the case, with prejudice, for lack of jurisdiction. Id.
¶ 26. On appeal, this Court determined that the circuit court did lack jurisdiction based on removal. Id. at 133 (¶ 5). “[O]nce removed to federal court, a case remains within the jurisdiction of the federal courts until an order is entered remanding the matter back to the state court.” Id. at 133 (¶ 6). The Court also determined that a dismissal with prejudice indicated a ruling on the merits, which was improper. Id. at 134 (¶ 9). The Court stated:
We modify the decision of the circuit court only to the extent that dismissal was with prejudice. Generally, a dismissal with prejudice connotes an adjudication on the merits. See generally Foundry Sys. & Supply, Inc. v. Indus. Dev. Corp., 124 Ga.App. 589, 185 S.E.2d 94, 95 (1971) (The phrase “with prejudice” in [the context of when an action is dismissed with prejudice] means an “adjudication on the merits and final disposition, barring the right to bring or maintain an action on the same claim or cause. Pulley v. Chicago, R.I. & P.R., 122 Kan. 269, 251 P. 1100 (1927). Black’s *615 Law Dictionary, 4th ed., p. 555”). Thus, lacking jurisdiction, the circuit court was without authority to address the merits. The circuit court should have simply dismissed this case for lack of jurisdiction.
Id. The Court reiterated its conclusion in Cook v. Children’s Medical Group, P.A., holding, in pertinent part, that: “If a court does not have subject matter jurisdiction to hear a case, then it cannot have jurisdiction to decide issues of fact and law....” Cook v. Children’s Med. Group, P.A., 756 So.2d 734, 743(37) (Miss.1999).
¶ 27. Thus, the chancellor could not dismiss Bell’s and Morse’s petition based on the question of subject-matter jurisdiction and then rule on the merits of the case.
B. Ruling on the Merits
¶ 28. The youth-court order, which transferred the case to chancery court, stated that the youth court’s orders would remain in effect until the chancellor rendered a decision. The chancellor granted the motion to dismiss and regarded the dismissal as a termination of the youth-court orders. Concerned that the custody of Baby Dennis would have been left in limbo, the chancellor awarded custody to Finnegan as the natural parent.
¶ 29. Under the natural-parent presumption, “it is presumed that it is in the best interest of a child to remain with the natural parent as opposed to a third party.” In re Dissolution of Marriage of Leverock and Hamby, 23 So.3d 424, 429(19) (Miss.2009). But that presumption may be rebutted by evidence that the parent relinquished the right “through abandonment, desertion, or other unfitness, and if it is otherwise overcome by an overriding concern for the best interest and welfare of a child.” Id. We do not suggest that Finnegan is unfit to have custody of Baby Dennis. But with these allegations, Finnegan is not automatically entitled to custody without some on-the-record findings.
¶ 30. Based on this Court’s review of the record, the chancellor failed to consider the history of this case before making his decision. The hearing transcript shows that the chancellor neither reviewed the youth-court record nor Finnegan’s “Written Request for Release of Custody” before rendering judgement:
COURT: Before you got here, Mr. Stewart, I asked Mr. Baker if he — I should have asked y’all earlier, but I — do you have a copy of the youth court file?
MR. STEWART: I do not, Your Honor.
COURT: What’s the word? Are we going to be able to get it?
MR. ROBERTS: The word is it’s on the way.
COURT: Do you want to join in his Motion to Dismiss?
MR. BAKER: Yes, Judge, we do.
COURT: All right. Court grants it. Dismissed. I’m also going to award sanctions to the defendant in the sum of $750 to be payable—
MR. BAKER: Your Honor, will the Court duly note that a decision has been rendered in this matter?
COURT: Yes.
MR. BAKER: In accordance with the order of the corrected review hearing officer order. So I don’t want there to be any argument that youth court orders are still in effect.
COURT: No. I’m getting a copy of that youth court file delivered and it’s going to be made a part of this record. Let me see the Order that you have. You represent to me as an officer of the court, sir, that this is a good, valid, and authentic copy of the Final Order that was entered by the youth court?
*616 MR. BAKER: Yes, Your Honor.
COURT: Okay. All right. The matter is dismissed.
MR. BAKER: Okay, Your Honor.
COURT: And I’m going to award the defendant $750 in attorney’s fees for — this matter is frivolous. The whole way it has been handled has been frivolous. I had to sit here and listen to a lawyer read to me a motion — he essentially read it to me verbatim for about — how long was it?— almost 30 minutes. This is the most frivolous conduct I’ve seen, that you would go to the youth court and ask for the matter to be transferred here and then file the guardianship here and then turn around and ask for it to be dismissed, but you’re getting what you want, and that is — custody, by the way, needs to go to this lady.
MR. BAKER: Thank you, Your Honor. And I want to make sure the Order indicates Ms. Wanda Bell has no further—
COURT: It’s dismissed with prejudice.
MR. BAKER: Okay.
MR. STEWART: Your Honor, if I may, please, I would like—
COURT: Don’t argue with the Court after the Court has ruled.
MR. STEWART: I’m not arguing with the Court, Your Honor. I just want to make a record that — never mind, strike it.
MR. BAKER: Thank you, Your Honor.
COURT: I do now — I have handed to me a copy — an entire copy of the youth court [sic], and the Order previously presented to me by Mr. Baker is very clear that it is the same one. These will be placed under seal inasmuch as they are youth court records.
¶ 31. As reflected by the trial transcript, the chancellor did not receive a copy of the youth-court file, which included Finnegan’s ‘Written Request for Release of Custody,” until after he had ruled on the matter. Because the chancellor had not seen the youth court file, it was impossible for him to give any consideration to its contents in making his decision. The chancellor abused his discretion by dismissing the case and then awarding custody to Finnegan without any on-the-record findings.
¶ 32. In youth court, the primary goals are to protect the child and also facilitate reuniting the family, if found to be in the child’s best interest. See Miss. Code Ann. § 43-21-103 (Rev.2009). In every child-custody matter, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Thus, the best interest of Baby Dennis is more important than Finnegan’s natural-parent status. Several years have elapsed since Finnegan has had custody of Baby Dennis, and it was inappropriate for the chancellor to grant Finnegan custody without evidence that she has rehabilitated herself and other relevant factors. The chancellor should not have awarded custody to Finnegan without determining whether she was suitable to regain care, custody, and control of Baby Dennis. See In the Interest of R.D., 658 So.2d 1378, 1387-1389 (Miss.1995). Additionally, the best interest of Baby Dennis far outweighs Bell’s and Morse’s desire to have their petition dismissed or the chancellor’s desire to teach them a lesson.
¶ 33. Because the matter was properly before the chancellor, and Baby Dennis’s future was in question, the chancellor should have proceeded with the custody hearing. The allegations in this case necessitate a thorough review of the youth-court record, a hearing on the matter, and possibly a guardian ad litem to represent the child’s best interest.
*617 CONCLUSION
¶ 34. This is a unique situation, and this Court’s holding is limited to the facts of this case. We hold that the case was properly before the chancellor. Thus, the chancellor erred by dismissing the case with prejudice and awarding custody to Finnegan without any on-the-record findings. As such, we find that a custody hearing, with on-the-record findings, is required to determine whether reuniting Finnegan and Baby Dennis are within the child’s best interest. We affirm in part and reverse in part and remand the case to the Chancery Court of Rankin County for further proceedings consistent with this opinion.
¶ 35. AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND LAMAR, J.

. Typically the Court uses initials or an alias to protect the anonymity of children. Because the child's initials are “B.A.D.,” we forego the use of her initials and refer to her simply as Baby Dennis.

. Finnegan’s request was accompanied by her own statement, several character references, a college transcript, related certificates of achievement, and miscellaneous photographs.

.Besides the initial neglect action in youth court following Baby Dennis's birth, the record is void of any further allegations of abuse or neglect.