WALLER, Chief Justice,
Dissenting:
¶ 18. Because the Lincoln County Chancery Court improperly asserted jurisdiction over John and Lenita Watts’s adoption petition, I respectfully dissent. The Wattses’ foster-parent relationship to A.B. and B.H. derived from the County Court of Jackson County, sitting as the Youth Court; thus, the Wattses are subject to jurisdiction in Jackson County concerning the two children.[29] Further, the Youth Court has considered a petition to terminate the natural parents’ parental rights and determined that reunification with the father, Frank Hartley, should begin. Because the Youth Court in Jackson County already has exercised jurisdiction over termination-of-parental-rights proceedings, it retains continuing jurisdiction over that issue, and the Lincoln County Chancery Court should not be allowed to reach that same issue by adjudicating an adoption over Hartley’s objection. For these reasons, I respectfully dissent.
¶ 19. Adoption and termination of parental rights are connected. Certainly, chancery courts have exclusive jurisdiction to hear and determine adoption proceedings. See Miss.Code Ann. § 93-17-3(4) (Rev.2004) (amended by Laws of 2012, ch. 556, § 1, effective July 1, 2012). But to grant an adoption over a parent’s objection, as here, chancery courts must first terminate the objecting parent’s parental rights. Miss.Code Ann. § 93-17-7 (Rev. *1062 2004). Conversely, a youth court that considers terminating parental rights must determine that “adoption is in the best interest of the child, taking into account whether the adoption is needed to secure a stable placement for the child and the strength of the child’s bonds to his natural parents and the effect of future contacts between them.... ” Miss.Code Ann. § 93-15-103(1) (Rev.2004). So, even though a youth court cannot hear or grant an adoption, it still must weigh whether adoption is in the child’s best interest before terminating parental rights. Adoption factors into termination of parental rights and vice-versa.
¶ 20. As the majority notes, a chancellor considering whether to terminate parental rights in a contested adoption proceeding is afforded a more expansive list of factors to consider than a youth court deciding whether to terminate parental rights only. Miss.Code Ann. §§ 93-15-103, 93-17-7 (Rev.2004). But, even if the means are slightly different, the end remains the same: termination or nontermi-nation of parental rights.
¶ 21. Here, the Youth Court in Jackson County has exercised its original jurisdiction over termination of parental rights. As the majority notes, proceedings to terminate the mother’s parental rights apparently remain pending, and the petition to terminate Hartley’s parental rights was dismissed so that reunification efforts could begin. Having exercised jurisdiction over termination-of-parental-rights proceedings, the Youth Court in Jackson County should retain continuing jurisdiction over A.B. and B. H.
¶ 22. This Court has held that where a chancery court exercises original jurisdiction in a divorce proceeding and decides issues pertaining to custody and visitation, that court has continuing jurisdiction over matters of contempt and termination of parental rights. Tollison v. Tollison, 841 So.2d 1062, 1064 (Miss.2003). In Tollison, a couple living in Prentiss County separated, and as a result, the wife and child moved to Lafayette County. Id. at 1063. Thereafter, the couple obtained a divorce in Prentiss County. Id. at 1064. Years later, the wife filed a complaint for contempt and termination of parental rights in the Lafayette County Chancery Court. Id. This Court held that the complaint should have been filed in Prentiss County — the court of original jurisdiction — rather than Lafayette County. Id. at 1066.
¶ 23. Though Tollison’s facts clearly are distinguishable, the principle of continuing jurisdiction should apply here to the Youth Court in Jackson County. Admittedly, we have held that a chancery court may properly exercise jurisdiction over an adoption even after a youth court has awarded custody to another relative. In re Beggiani, 519 So.2d 1208, 1209-11 (Miss.1988). In In re Beggiani, we reasoned that “adoption proceedings are entirely separate and distinct statutory proceedings neither connected with nor controlled by the prior custody awards of another court.” Id. at 1211 (citation omitted). Yet, termination of parental rights and reunification were not at issue in that case. The natural mother had signed a surrender of parental rights, and the natural father apparently was not in the picture. Id. at 1209.
¶ 24. In K.M.K. v. S.L.M., 775 So.2d 115, 118 (Miss.2000), we held “that a chancery court may not exercise jurisdiction over any abused or neglected child or any proceeding pertaining thereto over which the youth court may exercise jurisdiction if there has been a prior proceeding in the youth court concerning that same child.” There, the minor’s foster parents had filed a petition in the Chancery Court for the First Judicial District of Hinds County to *1063 terminate the natural parents’ parental rights after the County Court of Hinds County, sitting as the Youth Court, had refused to terminate the natural mother’s visitation rights. Id. at 116-17. We limited our holding in K.M.K. to “questions of priority jurisdiction in counties that have a county court sitting as a youth court in addition to a chancery court.” Id. at 118. And we noted specifically that youth courts do not have jurisdiction over adoption petitions. Id. at 118 n. 1 (citing Miss.Code Ann. § 93-17-3 (1994)).
¶ 25. Because all matters concerning the children should have been filed in Jackson County, I believe we should extend KM.K’s holding to these particular facts. In my view, a chancery court should not exercise its jurisdiction over a contested adoption proceeding if a youth court already has exercised its jurisdiction over termination-of-parental-rights proceedings, and reunification efforts have begun.
¶ 26. The same considerations that led to our holding in K.M.K. are pertinent here. Legislative intent was one of our principal concerns in that case. K.M.K., 775 So.2d at 118. One of the primary goals of youth courts is reunification, if that is found to be in the child’s best interest. B.A.D. v. Finnegan, 82 So.3d 608, 616 (Miss.2012) (citing Miss.Code Ann. § 43-21-103 (Rev.2009)). That goal is thwarted, however, if chancery courts are allowed to exercise jurisdiction over contested adoptions even as reunification is underway. In K.M.K., we also sought to prevent forum shopping and to avoid conflicting orders between trial courts on the same issues and multiple suits. K.M.K., 775 So.2d at 118. Under the majority’s opinion, foster parents or other persons aggrieved by a youth court’s deeision(s) can simply file for adoption in chancery court in hopes of obtaining a more desirable outcome. Chancery courts must not be allowed to function as appellate courts for prior youth-court decisions. McDonald v. McDonald, 39 So.3d 868, 886 (Miss.2010). Further, allowing the Lincoln County Chancery Court to exercise jurisdiction over the adoption at this point in the Youth Court proceedings potentially leads to conflicting orders and creates confusion. If a youth court has dismissed a petition to terminate a parent’s parental rights and ordered that reunification begin, it is inconsistent for a chancery court to step in, terminate that same parent’s parental rights, and grant an adoption. Also, what then becomes of the youth court’s reunification orders as the adoption proceedings are pending?
¶ 27. These types of cases are difficult for everyone involved, including courts. That said, I believe that principles of sound judicial administration and economy require chancery courts to refrain from exercising jurisdiction over contested adoption proceedings where a youth court has exercised jurisdiction over termination-of-parental-rights proceedings and reunification efforts have begun. The Wattses’ course for relief was in Jackson County, where A.B. and B.H. were subject to the Youth Court’s jurisdiction as neglected children, where the Wattses had derived their foster-parent status, and where termination of parental rights already has been considered. Therefore, I respectfully dissent.

. The Wattses are contractual foster parents. Unfortunately, the actual contract that the Wattses entered into is not in the record. But regulations of the Mississippi Department of Human Services (MDHS) state that foster parents who agree to serve as a "resource home,” "expressly waived any right to custody of a child placed in [their] home for care, unless the child is made free for adoption by the written decision and action of the court.” Dep’t of Human Services Regulations, 11-111 CMSR § 006-35, Appendix S (Rev.2008) (emphasis added).