# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01118-SCT

*K.S.*

*v.*

*M.D. AND M.F.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/08/2023 |
| TRIAL JUDGE: | HON. TROY FARRELL ODOM |
| TRIAL COURT ATTORNEYS: | TANNER ABY WALKER |
| | CASSANDRA S. WALTER |
| | JOSHUA MICHAEL COE |
| | EMMA McNAIR LYLE |
| | HEATHER MARIE ABY |
| | JEREMY PAUL McNINCH |
| | KERI HARALSON CARROLL |
| | W. THOMAS McCRANEY, III |
| | KIMBERLY MARIE PHILLIPS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | W. THOMAS McCRANEY, III |
| ATTORNEYS FOR APPELLEES: | JOHN S. GRANT, IV |
| | BROOKE T. GRANT |
| | KERI HARALSON CARROLL |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 08/14/2025 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2024-CA-00707-SCT

*K.S.*

*v.*

*M.D. AND M.F.D.*

DATE OF JUDGMENT:                 05/28/2024
TRIAL JUDGE:                       HON. TROY FARRELL ODOM
COURT FROM WHICH APPEALED:   RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       W. THOMAS McCRANEY, III
ATTORNEYS FOR APPELLEES:      JOHN S. GRANT, IV
                                      BROOKE T. GRANT
                                      KERI HARALSON CARROLL
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                       AFFIRMED - 08/14/2025
MOTION FOR REHEARING FILED:

**BEFORE KING, P.J., ISHEE AND BRANNING, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    The Rankin County Youth Court adjudicated K.S.'s minor child Jane[1] a neglected child on November 12, 2019. M.D. and M.F.D. later filed a petition in the Rankin County Chancery Court on August 30, 2022, to terminate K.S.'s parental rights and to adopt Jane. Twenty-one days prior to trial in the chancery court, M.D. and M.F.D filed in the youth court a motion to transfer, petitioning the youth court to transfer to the chancery court its jurisdiction over matters related to Jane. That same day, the youth court entered an order relinquishing its jurisdiction to the chancery court. The case then proceeded in the chancery court. There, the chancery court terminated K.S.'s parental rights and granted M.D. and M.F.D.'s adoption of Jane.

¶2.    In the two cases on consolidated appeal, K.S. challenges the termination of her parental rights and the denial of her Mississippi Rule of Civil Procedure 60(b) motion to set

---

[1] To protect the minor child's identity, a fictitious name is used, and initials are used for the parties.

aside the final judgment of adoption. She claims (1) that the chancery court lacked jurisdiction to terminate her parental rights, (2) that the chancellor's terminating her parental rights was an abuse of discretion, and (3) that the adoption must be vacated because the chancery court lacked jurisdiction to terminate her parental rights. Finding no error, we affirm the chancery court's judgments.

## FACTS AND PROCEDURAL HISTORY

¶3.     K.S. gave birth to Jane on August 20, 2018, at the age of twenty. She has a longstanding history of substance abuse—she used methamphetamine both before, during, and after her pregnancy with Jane.

¶4.     Following Jane's birth, K.S. and Jane briefly lived with K.S.'s grandmother, then with her father and stepmother. At trial in chancery court, K.S.'s stepmother testified that K.S. frequently left Jane, then only a month old, in the care of others and often screamed profanities at her.

¶5.     Six months later, K.S. moved in first with Jane's biological father, then with a friend. During this period, she resumed drug use. At trial, multiple witnesses, including K.S.'s aunt and first cousin M.F.D. testified that they often cared for Jane.

¶6.     In September 2019, when Jane was thirteen months old, K.S. entered a three-month rehabilitation program at Harbor House rehabilitation center. While K.S. was in treatment, Jane lived with K.S.'s aunt and mother.

¶7.     On November 6, 2019, while K.S. was still at Harbor House, the Mississippi

Department of Child Protection Services initiated a shelter hearing before the Rankin County Youth Court. And on November 12, 2019, the youth court adjudicated Jane a neglected child and awarded temporary custody to K.S.'s aunt.

¶8. After completing seven months of rehabilitative treatment, including stints at both Harbor House and Born Free New Beginnings treatment centers, K.S. briefly regained custody of Jane pursuant to an Order for Treatment entered by the youth court on February 24, 2020. And on June 18, 2020, a Permanency Order confirmed Jane would remain in K.S.'s custody.

¶9. In the fall of 2020, however, K.S. started dating and exposed Jane to a convicted felon with whom K.S. relapsed. And on October 19, 2020, the youth court removed Jane from K.S.'s custody and awarded durable legal custody to K.S.'s father and stepmother. K.S. testified at trial that this was the last time she saw Jane.

¶10. K.S. entered additional rehabilitation programs between 2020 and 2022, including Region 8 and Saving Grace Women's Home. Throughout this period, K.S. requested visitation with Jane. But family members refused and pursued legal custody transfers. In early 2022, the youth court granted durable legal custody of Jane to M.F.D. and M.F.D.'s husband, M.D.

¶11. On August 30, 2022, M.D. and M.F.D. filed a Petition for Termination of Parental Rights (TPR) and Adoption in the Rankin County Chancery Court. Twenty-one days before trial on June 19, 2023, M.D. and M.F.D. filed in the youth court a motion to transfer the case

4

to the chancery court. That same day, the youth court entered an Order Relinquishing Jurisdiction and Releasing Information, finding that "all matters have been disposed before this Court and a transfer [to the chancery court] is in the best interest of the child." The youth court also released the sealed youth-court file to the chancery court. Neither K.S. nor Jane's father appealed or challenged this order.

¶12.    On July 5, 2023, the TPR petition was tried over two days in the chancery court. Notably, in her report, the guardian ad litem recommended that K.S.'s parental rights be terminated. When M.D. and M.F.D. rested, K.S. moved ore tenus to dismiss the petition. K.S. argued—for the first time—that the youth court retained exclusive jurisdiction over the termination of her parental rights. But the court denied K.S.'s motion, finding that the youth court had entered a valid and lawful order transferring jurisdiction.

¶13.    On September 8, 2023, the chancery court entered a final TPR Judgment, terminating K.S.'s parental rights on the grounds of abandonment, desertion, unfitness, and failure to provide for Jane's needs. The court also found reunification was not in Jane's best interest. K.S. timely appealed that judgment. That appeal is listed as cause number 2023-CA-01118-SCT.

¶14.    The adoption then proceeded, ending in a Final Judgment of Adoption entered on December 20, 2023. K.S. did not appeal that judgment but later filed a Rule 60(b) motion, arguing that the adoption was void for lack of subject-matter jurisdiction.

¶15.    After a hearing on May 16, 2024, the chancery court denied the motion. Both from

the bench and in a order, the chancellor found that under Mississippi Code Sections 93-15-115 and -117 (Rev. 2021), youth courts may relinquish jurisdiction in favor of chancery courts when appropriate. Further, the chancellor concluded that the youth court's transfer was proper and that the chancery court had jurisdiction to hear the TPR and adoption matters. K.S. then appealed the denial of her Rule 60(b) motion. That appeal is listed as cause number 2024-CA-00707-SCT.

## ISSUES

¶16. K.S. raises three issues on consolidated appeal:

1. The chancery court lacked subject-matter jurisdiction to terminate K.S.'s parental rights.

2. Even if the chancery court had jurisdiction, its decision to terminate K.S.'s parental rights is manifestly wrong.

3. This Court should instruct trial courts to stay an adoption during an appeal of the TPR determination.

## STANDARD OF REVIEW

¶17. "Whether the chancery court had jurisdiction to hear a particular matter is a question of law, to which this Court must apply a de novo standard of review." *C.C.B. v. G.A.K. (In re Adoption of S.A.B.)* , 306 So. 3d 674, 677 (internal quotation marks omitted) (quoting *C.T. v. R.D.H. (In re Adoption of D.N.T.)*, 843 So. 2d 690, 697 (Miss. 2003)). "We review the chancellor's termination decision under the 'clearly erroneous/manifest error standard.' If there is substantial evidence to support the chancellor's findings, we will not disturb them, even though 'we might have found otherwise as an original matter.'" *J.J.B. v. Monroe Cnty.*

6

*Dep't of Child Prot. Servs. ex rel. Davenport*, 400 So. 3d 403, 408 (Miss. 2025) (citations omitted) (quoting *G.Q.A. v. Harrison Cnty. Dep't of Hum. Res.*, 771 So. 2d 331, 335 (Miss. 2000)).

## DISCUSSION

**1.      The chancery court had subject-matter jurisdiction to terminate K.S.'s parental rights.**

¶18.    This issue involves a single question: Did the chancery court have jurisdiction to terminate K.S.'s parental rights after the youth court—which had adjudicated Jane a neglected child but had not terminated K.S.'s parental rights—relinquished its jurisdiction to the chancery court?

¶19.    At the time of termination, Mississippi Code Section 93-15-105(1) provided:

> The chancery court has original exclusive jurisdiction over all termination of parental rights proceedings *except when a county court sitting as a youth court has acquired jurisdiction of a child in an abuse or neglect proceeding, then the county court shall have original exclusive jurisdiction to hear petitions for voluntary and involuntary termination of parental rights actions against a parent of that child* pursuant to the procedures of this chapter.

Miss. Code Ann. § 93-15-105(1) (Supp. 2024).

¶20.    On its face, the statute grants youth courts, to the exclusion of chancery courts, sole jurisdiction over the termination of parental rights when youth courts have adjudicated a child abused or neglected.  This Court has considered that jurisdictional grant in multiple cases in which youth courts and chancery courts were concurrently exercising jurisdiction.  *See **In re Adoption of S.A.B.**,* 306 So. 3d at 680 (holding that, even though the youth court

7

had jurisdiction over the neglected child, "the chancery court had jurisdiction to accept the natural parents' voluntary releases of parental rights and to adjudicate the competing adoption petitions"); *M.A.S. v. Miss. Dep't of Hum. Servs. (In re Petition of M.A.S.)*, 245 So. 3d 410, 415 (Miss. 2018) (holding that, prior to petitioning for adoption in chancery court, one must first petition for the termination of parental rights in youth court if the youth court has adjudicated the child abused or neglected); *see generally K.M.K. v. S.L.M. ex rel. J.H.*, 775 So. 2d 115, 118 (Miss. 2000) (holding "that a chancery court may not exercise jurisdiction over any abused or neglected child or any proceeding pertaining thereto over which the youth court may exercise jurisdiction *if* there has been a prior proceeding in youth court concerning the same child").

¶21.    That the youth court relinquished its jurisdiction to the chancery court sets this case apart, however.

¶22.    Regarding relinquishment, *Bell v. Finnegan (In re Guardianship of B.A.D.)*, 82 So. 3d 608 (Miss. 2012), is instructive.  There, the youth court adjudicated a child neglected and transferred custody to the child's grandfather.  *Id.* at 610.  The grandfather later died, and the youth court entered a temporary order awarding custody to the grandfather's "live-in companion."  *Id.*  On the eve of a hearing in the youth court to review the companion's temporary custody, the companion and the child's great aunt "filed a petition for coguardianship in chancery court[.]"  *Id.*  At the review hearing, the companion and the aunt "requested that the case be transferred to chancery court[.]"  *Id.*  But the child's mother

8

objected. *Id.* The following then transpired:

> The youth court determined that it would be in the child's best interest if the matter were transferred to chancery court. The youth court stated two supported reasons for its decision: "(a) the child has not resided with her mother since the child was a few days old; and (b) the chancery court is able to grant long-term relief to the parties and the youth court cannot grant long-term relief." Accordingly, the youth court entered an order transferring the custody case to chancery court and ordered that all youth-court orders were to remain in effect until the chancery court had rendered a decision.

*Id.*

¶23. On appeal, this Court considered "[w]hether the youth court erred by transferring the case to chancery court." *Id.* at 611. In doing so, it rejected the argument that, under *K.M.K.*, the youth court's prior involvement precluded the chancery court from exercising jurisdiction. *See K.M.K.*, 775 So. 2d at 118. It noted that unlike in *K.M.K.*, the youth court in *B.A.D.* had expressly and voluntarily relinquished jurisdiction. *In re Guardianship of B.A.D.*, 82 So. 3d at 614. Further, it noted that no statute prohibited youth courts from voluntarily relinquishing jurisdiction. *Id.* at 614. It thus held that "the youth court had authority to terminate its jurisdiction of the case." *Id.* at 614. And further, "the case was properly before the chancellor." *Id.* at 617.

¶24. Here, as in *B.A.D.*, the youth court entered an order transferring the case to chancery court. Further, the youth court relinquished its jurisdiction before any formal proceedings in the chancery court. In doing so, it found that all matters before it had been resolved and, notably, that such a transfer was in the best interest of the child.

¶25. Because the youth court formally released jurisdiction and no conflicting parallel

9

proceedings existed, the chancery court violated no statute and had jurisdiction to terminate K.S.'s parental rights. Therefore, in light of the precedent set in **B.A.D.**, we find no error in the chancery court's exercising jurisdiction over the termination of K.S.'s parental rights following the youth court's relinquishment.

¶26. Again, Section 93-15-105(1) grants exclusive jurisdiction over a neglected child to youth courts. But this exclusivity is not perpetual or immutable. When the youth court terminates its jurisdiction, the chancery court may exercise jurisdiction. It then follows that the adoption need not be vacated based on jurisdictional grounds. Because the chancery court had jurisdiction to terminate K.S.'s parental rights, it had jurisdiction to grant the adoption.

¶27. We do, however, echo *In re Guardianship of B.A.D.*'s clarification that its holding "does not suggest that youth courts can simply terminate their jurisdiction to get cases out of their chambers." 82 So. 3d at 613. Our holding does not make that suggestion either because when the youth court relinquished its jurisdiction, no issues remained pending in the youth court.

### 2. The chancellor did not abuse his discretion by terminating K.S.'s parental rights.

¶28. K.S. argues that the chancellor's terminating her parental rights was, in light of the evidence, manifestly wrong. But we find no manifest error in the chancellor's decision. On the contrary, his decision was supported by substantial credible evidence that established K.S.'s long and troubling pattern of abandonment, desertion, and unfitness to parent.

10

¶29. To reiterate, K.S. has a lengthy and ongoing history of methamphetamine abuse, beginning before and continuing throughout Jane's early life. Further, K.S. did not receive any prenatal care until she was nearly seven months pregnant, and soon after the child's birth, she was using drugs again.

¶30. Multiple caregivers also testified that K.S. often left Jane in the care of relatives or acquaintances because K.S. either failed to show up or was incapable of caring for her. Witnesses described a chaotic and unstable environment during the child's first year, including occasions when Jane would be passed between various caregivers with little consistency or explanation. K.S. routinely failed to pick Jane up from caregivers and left her in situations where no responsible parent was identifiable. This conduct supports the chancery court's conclusion that K.S. (1) abandoned Jane by evincing a "settled purpose to relinquish all claims and responsibilities" to Jane and (2) deserted Jane. Miss. Code Ann. § 93-15-103(a), (d) (Supp. 2024).

¶31. Testimony also revealed a lack of any genuine bond between K.S. and Jane. One caregiver recounted (1) witnessing K.S. scream profanities at Jane for crying as an infant and (2) finding Jane crying so hard she was choking, to which K.S. reportedly responded, "I can't deal with that." These incidents formed a consistent picture of emotional distance, irritability, and a failure to provide nurturing care.

¶32. Despite multiple opportunities, K.S. failed to maintain sobriety. She entered and exited numerous rehabilitation facilities, often relapsing shortly after completion or leaving

11

programs early. After completing a program at Harbor House in late 2019, she relapsed within months. She later entered a sober-living home but was asked to leave after her mother visited and introduced her to a method for getting high without failing drug tests. She continued to use drugs until at least March 2021. And she admitted to ongoing methamphetamine use from August 2021 to January 2022, long after she had lost custody. Such conduct may support a finding of unfitness when it demonstrates a substantial risk of compromising a child's safety and welfare. Miss. Code Ann. § 93-15-119(1)(a)(i) (Rev. 2021).

¶33.   K.S. also placed Jane in environments that compromised her safety. She allowed the child to be around a convicted felon with whom she used drugs. And during her periods of alleged sobriety, she failed to provide any financial or emotional support to those caring for the child. Notably, K.S. had no contact with Jane after October 2020, a period exceeding two years by the time of trial. During that time, she made no meaningful efforts to reconnect, provide support, or initiate visitation. This absence cannot be explained by mere incapacity. Rather, it reflects a deliberate severance of the parent-child relationship.

¶34.   In contrast, the child flourished once removed from K.S.'s care. Caregivers testified that Jane was withdrawn, emotionally flat, and developmentally behind when she was first removed from K.S. But within months, she began to speak in sentences, express emotion, and engage with others in a healthy and joyful way. Several witnesses described her transformation as remarkable. These findings support the conclusion that continued efforts

at reunification were not desirable toward achieving a satisfactory permanency outcome, as required by Mississippi Code Section 93-15-119(1)(a)(ii) (Rev. 2021).

¶35. Here, credible proof clearly supports the termination of K.S.'s parental rights. The sustained drug abuse, the prolonged absence of contact, the instability, and the child's thriving outside of K.S.'s care all support the conclusion that the termination was not error. Accordingly, we affirm the chancellor's decision to terminate K.S.'s parental rights.

### 3. K.S.'s urging this Court to create a new procedural rule is without merit.

¶36. K.S. asks this Court to adopt a rule requiring chancery courts to stay adoption proceedings when a parent appeals the termination of his or her parental rights. We decline for two reasons.

¶37. First, K.S. does not appeal the denial of a motion to stay pending her appeal of the termination of her parental rights. Instead, she merely advocates for future, unknown parties. This issue is thus moot and does not warrant appellate review. *See Frisby v. City of Gulport (In re City of Biloxi)*, 113 So. 3d 565, 572 (Miss. 2013) ("This Court cannot entertain an appeal where there is no actual controversy." (internal quotation mark omitted) (quoting *Gartrell v. Gartrell*, 936 So. 2d 915, 916 (Miss. 2006))).

¶38. Second, K.S. supports her request by citing out-of-state decisions such as *Kobinski v. State, Welfare Div.*, 738 P.2d 895 (Nev. 1987), and *C.A.B. v. J.D.M. (In re Adoption of C.B.M.)*, 992 N.E.2d 687 (Ind. 2013). But Mississippi has never adopted the blanket rule K.S. urges. And decisions of other state courts exert no authority over this Court. *Paz v.*

13

*Brush Engineered Materials, Inc.*, 949 So. 2d 1, 7 (Miss. 2007).

¶39.    In Mississippi, the settled standard is that "[a] decision to grant or deny a motion to continue or a motion to stay the proceedings pending the outcome of a separate action is within the sound discretion of the trial court judge and will not be disturbed absent evidence of abuse." *Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 307 (Miss. 1999).

## CONCLUSION

¶40.    The chancery court had jurisdiction to terminate K.S.'s parental rights. And the chancery court had jurisdiction to grant the adoption. Further, the chancellor's termination of K.S.'s parental rights was supported by the evidence and was not manifestly wrong. We affirm both the termination of K.S.'s parental rights and the adoption.

¶41.    **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**